THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE INTERNATIONAL CONTRACTING COMPANY, Relator, v. JAMES A. ROBERTS, as Comptroller of the State of New York, Respondent.

*Franchise tax upon a foreign corporation — the basis of taxation cannot exceed the capital stock — when the amount as fixed under a first report will not be altered on a rehearing.*

The basis of a tax imposed upon the business or franchise of a foreign corporation cannot exceed the amount of the capital stock authorized by its charter. Where the amount of the capital stock, employed within the State of New York, of a foreign corporation has been fixed by the Comptroller, after a report has been made by the corporation to him, such amount will not be changed on a rehearing before the Comptroller on which it is claimed that the debts exceed the assets, where it is not satisfactorily shown why the whole indebtedness was not stated in the first report, or how the debt arose.

CERTIORARI issued out of the Supreme Court and attested on the 13th day of June, 1896, directed to James A. Roberts, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings in assessing upon the relator a business or franchise tax for the year ending November 1, 1895, under chapter

PEOPLE ex rel. CONTRACTING CO. *v.* ROBERTS.   401

App. Div.]        THIRD DEPARTMENT, MARCH TERM, 1898.

542 of the Laws of 1880, and the acts amendatory thereof and sup-
plemental thereto.

*Edmund L. Cole* and *John B. Green,* for the relator.

*G. D. B. Hasbrouck, Deputy Attorney-General,* for the
respondent.

MERWIN, J.:

The relator is a New Jersey corporation, and the following facts
appear from its report made to the Comptroller in November, 1895,
for the year ending November 1, 1895:

The company was organized under the laws of the State of New
Jersey on April 14, 1892, and began business in the State of New
York in the month of April, 1892. The total authorized capital of
the company was $100,000, and the whole amount was paid into the
treasury of the company. No dividends have been declared   The
business transacted by the company in this State for the year end-
ing November 1, 1895, was dredging and dike building on the Hud-
son river, harbor of New York and city of Brooklyn, and the total
amount of sales made in the State for that year was the sum of
$301,934.37, and none were made elsewhere. The principal place
of business of the company was in Syracuse, N. Y. It had no stock
on hand with the exception of its plant, which consisted of dredges,
pumps, pile drivers and scows. This plant was used here and was
worth $300,000. It was incumbered for $220,000. The average
of its monthly bank balances carried in this State was $9,500, and it
paid rentals to the amount of $1,200, and salaries to the amount of
$90,000.

The report does not state what was meant by the term "sales."
Having in view the character of the business, it may, perhaps, be
inferred that the term meant the gross earnings.

Thereupon, on or about the 20th of December, 1895, the Comptrol-
ler fixed the amount of the capital stock of the relator employed
within this State at the sum of $300,000, and adjusted the tax
accordingly.

The relator applied for a rehearing, and it was had in February,
1896. The treasurer of the company, who had made the previous

402   PEOPLE ex rel. CONTRACTING CO. v. ROBERTS.

THIRD DEPARTMENT, MARCH TERM, 1898.          [Vol. 27.

report, testified that during the year ending November 1, 1895, the total amount of the gross assets in the State was $312,499.98, made up of plant, $300,000; machinery and tools, $10,000; furniture, $200; average bank balance, $2,299.08; that during that year the company was indebted for the articles which entered into the amount of the gross assets, and that the items of such indebtedness owing on November 1, 1895, were, bonded debt, $196,019.48; interest due, $4,317.77; floating debt bills payable, $143,945.57; the total being $344,282.82.

The attention of the witness was called to the discrepancy between the average bank balance as stated in the original report and as stated on the rehearing, and the witness replied that the report was made up to the best of their knowledge at the time, but that after making an inventory " the figures seemed to be different;" that his present statement was from an actual invoice; that the average bank balance as stated in the report was for the six months they were working, and as given on the rehearing was for the whole year.

The claim of the relator on the rehearing was that the debts exceeded the assets, and, therefore, the company had no capital invested in the business in this State, and should not be taxed at all.

It is now conceded by the Comptroller, in view of the decision of this court in *People ex rel. Advertising Co.* v. *Roberts* (4 App. Div. 288; affd., 151 N. Y. 621), that the basis of taxation against the relator could not exceed the amount of capital stock authorized by its charter, and that, therefore, the valuation should be reduced to $100,000. Whether it can be sustained at that amount is the question now to be considered.

The general rule is that the capital stock of a foreign corporation employed in this State is represented by the actual value of its property within this State, whether in money or goods or other tangible things (*People ex rel. Singer Mfg. Co.* v. *Wemple*, 150 N. Y. 46, 51), not exceeding the amount authorized by its charter. It is in substance claimed by the relator that, in determining such actual value, the liabilities incurred by the relator for such property should be deducted.

Assuming that outstanding liabilities for such property may be considered in determining the amount of capital employed in this State, it is quite clear that, upon the facts stated in the original

report made by the relator to the Comptroller, a valuation at $100,000 would be proper.

Was a case presented upon the rehearing sufficient to require a different conclusion? That depends upon the significance to be given to the evidence as to a floating debt. Instead of stating as in the report that the plant was incumbered for $220,000, it was stated that the bonded debt and interest was about $200,000, and the floating debt was about $144,000. No satisfactory reason is given why the whole was not stated in the report, nor is it stated how or when the floating debt arose, except the general statement that the indebtedness was for the articles which entered into the amount of the assets. No explanation is given of the item appearing in the report of $300,000 for sales or what became of that amount. The total paid for salaries, or salaries and wages, as stated by the counsel for the relator, was $90,000; and the rentals paid were $1,200. Deducting these from the amount of sales, so called, there remained over $200,000 unaccounted for. Until that is accounted for, it may well be said that the item for floating debt or bills payable should not be deducted from the value of the other property. This debt, for aught that appears, was incurred during the year and ordinarily should be provided for out of the surplus earnings or sales.

I, therefore, conclude that the relator, at the rehearing, did not present any sufficient reason to change the valuation properly reachable upon the facts stated in the report. The valuation should, therefore, stand at $100,000 and the determination be modified accordingly. The relator should not have costs, as the ground for the modification as allowed was not taken at the rehearing or in the application for the writ.

All concurred.

Determination of the Comptroller modified by reducing the valuation to $100,000, with a corresponding reduction of the tax.